IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES R. RUSSELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:11cv418-WHA |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

## I.   INTRODUCTION

On November 7, 2008, a jury found the petitioner, James R. Russell ("Russell"), guilty of one count of conspiracy to distribute cocaine and cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 841(a)(1) and 846, and four counts of using a phone to facilitate a drug crime, in violation of 21 U.S.C. § 843(b).  On June 10, 2009, the district court sentenced Russell to 121 months in prison.

Russell appealed, arguing that (1) there was insufficient evidence to sustain his convictions, because (a) the Government's primary witness – Marcus Jenkins – was "incredible as a matter of law" and (b) the evidence established only a buyer-seller relationship between Russell and Jenkins, not a conspiracy; (2) the district court abused its discretion by refusing to give a jury instruction defining a buyer-seller relationship and

distinguishing it from a conspiracy, and by giving a conspiracy instruction that did not adequately cover the buyer-seller relationship; (3) the district court abused its discretion by denying his motion for a mistrial because the prosecutor invaded the province of the jury and improperly vouched for witness Marcus Jenkins by identifying the voices on a recorded audiotape; (4) the district court abused its discretion in denying his motion for a new trial because Marcus Jenkins underwent a psychological examination at his counsel's request, Russell was not made aware of this until after trial, and therefore he was not able to use this information for impeachment purposes; and (5) the district court should have granted a new trial because it used an improper verdict form, which did not offer the jury the option of finding him responsible for less than 5 grams or less than 50 grams of crack cocaine.

On April 30, 2010, the Eleventh Circuit issued an opinion rejecting Russell's arguments and affirming his convictions and sentence. *United States v. Russell*, 378 Fed. App'x 884 (11th Cir. 2010) (unpublished).

On August 20, 2011, Russell, proceeding *pro se,* filed this § 2255 motion, in which he asserts the following allegations of ineffective assistance of counsel:

1. His counsel rendered ineffective assistance at trial by–

    (a) failing to obtain an expert to conduct voice-recognition tests on the intercepted phone calls;

    (b) failing to file a motion to suppress the intercepted phone calls on the ground Russell's voice was not on the calls;

    (c) failing to object at trial to the intercepted phone

2

calls on the ground Russell's voice was not on the calls;

(d)      failing to hold the Government to its burden of presenting direct or circumstantial evidence proving that Russell actually participated in the calls;

(e)      failing to argue that the phone number called by Marcus Jenkins on the intercepted calls did not belong to Russell;

(f)      failing to object to the intercepted phone calls on the ground they were inadmissible hearsay based on the uncorroborated testimony of coconspirators;

(g)      failing to file a motion for a pretrial "*James* hearing" on the admissibility of the Government's evidence, specifically the intercepted phone calls;

(h)      arguing in a pretrial motion to suppress that Russell had standing to challenge the intercepted phone calls;

(i)      misrepresenting the facts of the Government's case to Russell, leading him to believe counsel could offer a reasonable and successful challenge to the intercepted phone calls;

(j)      interfering with Russell's right to testify in his own behalf by–

        (*i*)    failing to call Russell at the suppression hearing or at trial to testify that it was not his voice on the intercepted phone calls;

        (ii)    telling Russell that if he chose to testify, he could find a new lawyer

and that it was counsel's decision whether he testified or not; and

(iii)    failing to follow Russell's advice on how best to challenge the intercepted calls and on the best defense to pursue;

(k)    failing to hold the Government to its burden of proof of demonstrating through reliable and admissible evidence that the cocaine Russell conspired to distribute was the crack form instead of some other form;

(l)    failing to object to the admissibility of the plea agreements of coconspirators Marcus Jenkins and Draper Carter;

(m)    failing to object to the admissibility of the proffer statements of Jenkins and Carter;

(n)    failing to argue that the Government had no reliable and admissible evidence to corroborate the proffer statements of Jenkins and Carter;

(o)    failing to object to the admissibility of the photographs of Russell's coconspirators;

(p)    failing to challenge the conspiracy count of the indictment on the ground that Russell and Jenkins had no more than a buyer-seller relationship.

2.    His counsel rendered ineffective assistance at sentencing by–

(a)    failing to object to the admissibility of the proffer statements of his coconspirators, foreclosing effective objections to the presentence investigation report ("PSI");

(b)    failing to make an argument based on *Apprendi*;

      (c)     failing to object to the Government's failure to prove he possessed crack cocaine as opposed to other forms of cocaine; and

      (d)     failing to object to his sentence based on the drug quantities reflected in the jury's special verdict.

    3.    His counsel rendered ineffective assistance on appeal by failing to raise all the issues discussed above.

Doc. No. 1.[1]

The Government answers that Russell is not entitled to any relief on his claims of ineffective assistance counsel, because he fails to satisfy the requirements of *Strickland v. Washington*, 466 U.S. 668 (1984), of proving deficient performance by counsel and resulting prejudice. *See* Doc. Nos. 18 & 20. Based on the court's consideration of the parties' submissions and the record, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, Russell's § 2255 motion should be denied.

## II.   DISCUSSION

### A.   General Standard of Review

Collateral review is not a substitute for direct appeal; therefore, the grounds for

---

[1] The claims in Russell's motion are not always clearly delineated, frequently overlap, and are set forth in a discursive fashion. For organizational and analytical purposes, this court has recast some of the claims in a more appropriate presentation. References to document numbers ("Doc. No.") are those assigned by the Clerk of Court in the instant civil action. Page references to pleadings are to those assigned by CM/ECF. References to exhibits ("Ex.") are to those filed by the Government with its answer.

collateral attack on final judgments of conviction are extremely limited. A federal prisoner is entitled to relief under 28 U.S.C. § 2255 only if the district court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum sentence authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Id*. at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice"). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

**B.   Claims of Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Id., at 689. Second, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial

fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### 1.    *Failure to Challenge Voice on Intercepted Phone Calls*

In his § 2255 motion, Russell raises sundry allegations of ineffective assistance of counsel with regard to his lawyer's failure to argue that it was not Russell's voice on phone

calls intercepted by the Government pursuant to wiretaps and admitted at trial. *See* Doc. No. 1 at 5-8, 14-17 & 25-27.

Before trial, the Government and Russell's counsel entered into an unopposed notice of stipulations, which included an agreement between the parties concerning the voices heard on the intercepted phone calls. Ex. O at 2. The stipulation relieved the Government of having to provide voice-identification experts at trial, but stated that the Government would present witness testimony identifying the participants in the intercepted calls. *Id*. Also before trial, Russell's counsel filed a requested jury instruction that provided as follows:

VOICE IDENTIFICATION

> This court has previously held that, to admit into evidence a recorded conversation, the government must establish, inter alia, the identification of the speakers. …

> A speaker's voice may be identified by opinion testimony "based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." … "Once a witness establishes familiarity with an identified voice, it is up to the jury to determine the weight to place on the witness's voice identification."

Ex. P at 28 (citations omitted).

At trial, testifying coconspirators Marcus Jenkins and Draper Carter, both of whom were longtime friends and associates of Russell, identified Russell's voice on the audiotape recordings of five telephone conversations between Russell and Jenkins. During these conversations, Russell and Jenkins discussed the purchase of large quantities of cocaine from Jenkins's uncle, who trafficked cocaine from Texas to Alabama from a source in Mexico.

Russell maintains that, prior to trial, he told his counsel that it was not his voice on the intercepted phone calls.  Consequently, he says, his counsel rendered ineffective assistance by (a) failing to obtain an expert to conduct voice-recognition tests on the calls, (b) failing to file a motion to suppress the intercepted calls on the ground that Russell's voice was not on them, (c) failing to object at trial on the ground Russell's voice was not on the calls, (d) failing to hold the Government to its burden of presenting direct or circumstantial evidence proving that Russell actually participated in the calls, and (e) failing to argue that the phone number called by Jenkins on the intercepted calls did not belong to Russell.  Doc. No. 1 at 5-8, 14-17 & 25-27.  According to Russell, the outcome of the proceedings would have been different if his counsel had heeded his claim that it was not his voice on the intercepted phone calls and sought to prevent admission of the calls on that basis.  *Id*.

In addressing Russell's allegations of ineffective assistance of counsel, attorney Susan G. James, who represented Russell throughout trial, sentencing, and appeal, filed two affidavits in which she avers, in pertinent part, as follows:

### 1.  Voice Not On Wiretap

After having listened to the recordings, counsel recognized Russell's voice on the tapes at issue.

### 2.  Ignored Russell's Wishes

Nothing can be further from the truth.  I listened to any request he made and adhered to his suggestions whenever possible and credible.

### 3.  Voice Analysis

10

There was no reason to hire an expert when it was obvious it was Russell's voice.

4.   Jenkins and Carter, longtime friends and associates of Russell, identified his voice.

Doc. No. 17 at 3.

\* \* \* \* \*

2.   Again, in response to Russell's claim that counsel should have had the Title III intercepts analyzed to establish the voices thereon, counsel responds that Russell's argument has no merit.  The identity of Jenkins's voice and others was not in dispute as numerous of them testified at trial and/or pled guilty adopting the Government's theory of the case.  Counsel had numerous conversations with Russell and knew full well his voice was intercepted on some of the recordings.  This fact Russell did not deny.  He simply kept saying to counsel that drugs were never mentioned on any of the conversations.

3.   Contrary to Russell's assertion, his defense, the one he insisted on, was that the recordings, which were left open to interpretations by Government's witnesses and acceptance or rejection by the jury, contained no references to drugs.

4.   Russell rejected all plea offers and demanded a trial.  Counsel vigorously defended him.  His hindsight complaints are totally without merit.

5.   Russell's reference to the Government's notice of stipulations was a matter for counsel to decide based on her knowledge, skill, training, and familiarity with the facts of the case.

6.   Russell's concurrence was not required.  Although [the stipulations] were clearly consistent with his defense.  Counsel is confident that this was brought to Russell's attention as was all other evidence and issues related to the case.

....

9.   It is also interesting to note that despite Russell's repeated and belated claim that the Title III intercepts should have been analyzed for voice

11

verification, he has offered no evidence of any result proving that his voice was not on the recordings as he now claims in his 28 U.S.C. §2255.

10.   Contrary to Russell's position that without the stipulation the outcome would have been different, such is not the case.  Russell never denied to counsel his voice was intercepted.  Instead, he insisted that none of the recordings had references to drugs or illegal activity.  As a strategic decision, counsel felt denying that Russell's voice was on the recordings would have jeopardized any credibility to his insisted position that the recordings contained no incriminating evidence.  As counsel recalls, she did not concede that the recordings contained his voice.

....

13. Counsel's recollection is that some of Russell's lifelong friends also identified his voice on the recordings played at trial as well as interpreting the content of the calls to include incriminating information regarding drug transactions.

Doc. No. 23 at 2-4.

James's decision to forego voice-recognition testing of the intercepted phone calls was professionally reasonable.  From her numerous conversations with Russell, she was able to recognize his voice on the recordings and was thus aware it would be pointless to obtain testing that would merely have corroborated her own observations.  As discussed below, James attempted at trial generally to undermine the credibility of Marcus Jenkins and Draper Carter, who testified that they recognized Russell's voice on the intercepted calls.  This represented a sound strategic choice by James in light of her belief that the results of expert voice-recognition testing would not help Russell's defense.  The pretrial stipulation arguably worked to Russell's advantage, as it resulted in the Government's not presenting expert voice-recognition testimony damning to Russell and enabled James to argue to jurors that the

12

only witnesses to identify Russell's voice on the calls were testifying coconspirators who lacked credibility. Russell also fails to demonstrate prejudice resulting from James's decision in this regard, as he has not proffered any evidence that refutes James's personal observations or the testimony of Jenkins and Carter, both longtime friends of Russell, who identified his voice on the calls. Russell's failure to demonstrate deficient performance by counsel or any resulting prejudice precludes relief under the standards of *Strickland*. *See* 668 U.S. at 687-88.

James's decision not to file a motion to suppress the intercepted calls (or to object to their admission at trial) on the ground that Russell's voice was not on them was also professionally reasonable. Russell's assertion that he told James prior to trial that it was not his voice on the calls, but that James ignored his claim, is refuted by James in her affidavit, where she states that Russell never denied it was his voice on the calls (but instead insisted only that drugs were never mentioned during the recorded conversations) and that she listened to any request Russell made and "adhered to his suggestions whenever possible and credible." Doc. No. 17 at 3. Because James recognized Russell's voice on the recordings, an argument that it was not Russell would have been incredible. Again, Russell also fails to demonstrate prejudice, because he proffers no evidence to rebut James's statements that she recognized his voice on the calls or the testimony by Jenkins and Carter identifying his voice on the calls.

The record also refutes Russell's suggestion that James wholly failed to hold the

Government to its burden of presenting evidence proving that Russell was one of the speakers on the intercepted calls.  While the pretrial stipulation obviated the need for the Government to put on expert voice-identification witnesses at trial, the stipulation stated that the Government would be required to present testimony identifying the speakers on the calls. James also filed a proposed jury instruction specifically instructing the jury that the Government had to prove the identity of the speakers on the intercepted calls and that the jury should consider the circumstances surrounding the identification in determining the weight to give the witnesses' testimony on this issue.  During her opening statement, James disparaged Marcus Jenkins and told jurors they would have to rely on Jenkins's word that the five audiotaped conversations were between Jenkins and Russell.  Ex. S at 74.  James referred to the intercepted calls as "purported" conversations between Jenkins and her client and did not concede it was Russell speaking in the calls.  *Id*.  Just before the intercepted calls were offered into evidence by the Government, James specifically stated that she and Russell were not conceding that Russell was one of the individuals conversing on the calls.  *Id*. at 169-71.  In her closing argument, James argued that Marcus Jenkins was the only one who had testified about who was speaking in the audiotaped conversations and that Jenkins was not credible. Ex. T at 144-49. James also argued in a motion for judgment of acquittal that the Government had failed to establish that Russell was one of the speakers on the recorded conversations.  *Id*. at 99-100.  Finally, as already noted, Russell has not proffered any evidence that refutes the testimony he was the other party on the recorded conversations with

Marcus Jenkins. Therefore, he cannot demonstrate any prejudice resulting from James's performance in this regard.

Russell is also incorrect in claiming that James failed to argue that the phone number called by Jenkins on the intercepted calls did not belong to Russell.  During closing arguments, in an attempt to weaken the Government's case, James pointed out to jurors that the Government did not introduce any telephone records to establish that the five intercepted calls from Jenkins were in fact to Russell and that no evidence had been presented to corroborate Jenkins's testimony that he called Russell or had been called by him.[2]  Ex. S at 148-49.  James acted within the wide range of reasonably professional assistance in doing so.  Moreover, Russell proffers no evidence establishing that the phone number called by Jenkins did not belong to him, or that he did not possess a phone with that number.  Thus, he fails to prove prejudice.

For the reasons set forth above, Russell is not entitled to any relief based on these claims of ineffective assistance of counsel.

2.    *Failure to Object to Intercepted Phone Calls as Inadmissible Hearsay Because of "Uncorroborated Testimony of Coconspirators"*

Russell also contends that James rendered ineffective assistance of counsel at trial by failing to object to the intercepted phone calls on the ground they were inadmissible hearsay

---

[2] The Government correctly observes that, although such evidence might have bolstered the Government's case, it was not necessary to prove that the phone number Jenkins called was Russell's, or that Russell possessed a phone with that number, to prove it was Russell making the drug deals recorded on the intercepted calls.

based on the uncorroborated testimony of coconspirators.  *See* Doc. No. 1 at 13-14.  In this regard, Russell appears to argue – incorrectly – that the trial testimony of Marcus Jenkins and Draper Carter could not be used to establish the existence of a conspiracy so as to make the contents of the phone calls admissible as out-of-court statements by a coconspirator.  *Id*.

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."  *See* Fed.R.Evid. 801(d)(2)(E).  In *Bourjaily v. United States*, 483 U.S. 171 (1987), the Supreme Court held that the Government need prove the preliminary facts establishing a conspiracy only by a preponderance of the evidence and that the statements sought to be admitted could themselves be examined as evidence of the underlying conspiracy.  *Id*. at 176, 181.  Rule 801 of the Federal Rules of Evidence was revised to incorporate the *Bourjaily* ruling, stating:  "The statement must be considered but does not by itself establish ... the existence of the conspiracy or participation in it."  Fed.R.Evid. 801(d)(2).  "For evidence to be admissible under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence these things:  (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy."  *United States v. Hasner*, 340 F.3d 1261, 1274 (11th Cir. 2003).

As the Government observes, the record reflects that James fully understood that before the out-of-court statements on the intercepted phone calls could be admitted as the

statements of a coconspirator in furtherance of the conspiracy, the Government would have to prove there was a conspiracy. *See* Ex. S at 49, 101, 109, 166-67 & 173. Once the Government presented the testimony of DEA Special Agent Bret Hamilton and coconspirator Jenkins, there was sufficient evidence before the jury to establish a conspiracy. *Id*. at 167-73. "Testimony of a coconspirator, even if uncorroborated, is sufficient to support a conviction." *United States v. Broadwell*, 870 F.2d 594, 601 (11th Cir. 1989). Therefore, even the testimony of Jenkins standing alone would have sufficed to establish that a conspiracy existed and laid the ground for admission of the intercepted phone calls containing the statements of a coconspirator in furtherance of the conspiracy. Russell's understanding of the law on this issue is flawed, and he fails to show either deficient performance by James or any resulting prejudice. Consequently, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 3.    *Failure to Request "James Hearing"*

Russell claims James rendered ineffective assistance of counsel by failing to seek a pretrial hearing pursuant to *United States v. James*, 590 F.2d 575 (5th Cir. 1979), to determine in advance of trial whether a conspiracy existed, for purposes of determining the admissibility of the out-of-court statements on the intercepted phone calls. *See* Doc. No. 1 at 21-23.

In *James*, the former Fifth Circuit Court of Appeals set out the procedure for determining whether a co-conspirator statement meets the requirements of Fed.R.Evid.

801(d)(2)(E).[3]   Under *James*, the Government bore the burden of proving the existence of

an underlying conspiracy by "substantial" evidence "independent of the hearsay declarations

of the coconspirators." *James*, 590 F.2d at 580–81.  The court's determination of whether

the Government has met its burden could be made pretrial during a hearing outside the

presence of the jury, or a statement could be admitted subject to the requirement that the

government will "connect it up" by the end of trial, that is, will establish a proper foundation

for the admission of the statement.  *Id*. at 581–82.  Under *James*, the "preferred" order of

proof was a pretrial hearing "whenever reasonably practicable," wherein the trial court would

assess the evidence of a conspiracy before admitting coconspirator statements, *id*. at 582,

though the Eleventh Circuit Court of Appeals later reemphasized that such hearings are not

mandatory.  *United States v. Espino–Perez*, 798 F.2d 439, 441 (11th Cir. 1986).

Addressing Russell's claim of ineffective assistance of counsel, James states as

follows:

> Counsel concedes a *James* hearing was not sought and further based on
> her experience was not needed.  Self-serving statements of co-defendants are
> the norm and they had nothing to do with the admissibility.  Again, counsel
> argued a buyer-seller relationship and never conceded the Government had
> proven a conspiracy.

Doc. No. 17 at 4-5.

Russell fails to demonstrate that James's decision was professionally unreasonable or

---

[3] In *Bonner v. Prichard*, 661 F .2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit
Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed
down prior to the close of business on September 30, 1981.

that he was in any way prejudiced by James's decision.  As noted, *James* hearings are not mandatory.  *Espino–Perez*, 798 F.2d at 441.  The district court could adequately address the defense's evidentiary concerns during the trial itself.  *See United States v. Sanchez*, 722 F.2d 1501, 1507 (11th Cir. 1984) (holding that a separate *James* hearing was not required and that it was not error to decide the *James* issue after the Government had introduced the statements into evidence).  Here, the district court required the Government to independently establish the existence of a conspiracy during trial before it permitted the intercepted phone calls to be admitted.  *See, e.g.*, Ex. S at 49 & 167-73.  Defense counsel guarded against the admission of the intercepted calls until the Government established the conspiracy.  *See id*. at 101, 109, 166-67 & 173.  Russell does not present a legitimate basis for claiming the calls were not admissible at trial.  For these reasons, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 4. *Standing to Challenge Intercepted Phone Calls and Reasonable Basis for Challenging Calls*

Russell contends James was ineffective for (a) arguing to the court in a pretrial motion to suppress that Russell had standing to challenge the intercepted phone calls and (b) misrepresenting the facts of the Government's case to him and thereby leading him to believe counsel could offer a reasonable and successful challenge to the intercepted calls.  Doc. No. 1 at 12-17.

James filed a pretrial motion to suppress all evidence derived from the intercepted phone calls on the ground that the Government failed to comply with Title III of the Omnibus

Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.* ("Title III"),[4] in

obtaining the orders that authorized the phone wiretaps. Ex. H. She specifically argued that

the wiretaps were improper because the Government failed to establish that other traditional

means of investigation were ineffective and had been exhausted. *Id.* After an evidentiary

hearing – where James maintained Russell had standing to challenge the five audiotaped

phone calls in which Russell was a participant – the magistrate judge entered a

recommendation that the motion to suppress be denied. Ex. L. The magistrate judge

assumed, without deciding, that Russell had standing as to the five phone calls involving

Russell and Marcus Jenkins. *Id.* at 6-7. The magistrate judge then found that the wiretaps

---

[4] Congress enacted Title III in 1968, in order to meet and exceed the restrictions on wiretapping that the Supreme Court, in two decisions the previous year, found the Fourth Amendment to require. *See Katz v. United States*, 389 U.S. 347, 354-57 (1967); *Berger v. New York*, 388 U.S. 41, 55-60 (1967). Title III effectuates what the Supreme Court has described as a "comprehensive scheme for the regulation of wiretapping and electronic surveillance." *Gelbard v. United States*, 408 U.S. 41, 46 (1972). The Title III scheme includes various procedural and substantive restrictions, such as multiple levels of antecedent approvals, by which Congress sought to "guarantee that wiretapping ... occurs only when there is a genuine need for it and only to the extent that it is needed." *Dalia v. United States*, 441 U.S. 238, 250 (1979). Among other things (1) Congress prohibited the use of wiretaps except in connection with the investigation of offenses, enumerated in 18 U.S.C. § 2516, that it regarded as "major crimes," *see* S. Rep. No. 90-1097, at 2 (1968); (2) federal prosecutors and law enforcement personnel may not apply for judicial authorization of a wiretap until after they obtain the approval of the Attorney General of the United States or a specially-designated senior official of the Justice Department, *see* 18 U.S.C. § 2516(1); (3) after obtaining the necessary upper-echelon Justice Department approval, federal prosecutors and law enforcement personnel must make a written application to a judge for an order authorizing the wiretap, *see* 18 U.S.C. § 2518(1); and (4) in addition to showing there is probable cause to believe that a wiretap will yield evidence of one of the offenses enumerated in 18 U.S.C. § 2516, the wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," so that a judge may determine in advance whether wiretapping, rather than conventional investigative methods, is necessary, *see* 18 U.S.C. §§ 2518(1)(c), 2518(3)(c).

were justified as necessary, because other traditional means of investigation had been employed but could not effectively infiltrate the drug trafficking organization under investigation. *Id*. at 8-9. The district court subsequently adopted the magistrate judge's recommendation and denied the motion to suppress. *See* Ex. N.

According to Russell, by asserting in her suppression motion that Russell had standing to challenge the Government's actions in recording the phone calls and by presenting a "meritless" challenge to the legality of the wiretaps, James effectively "conceded" that Russell "participated in the relevant communications." *See* Doc. No. 21 at 11; *also* Doc. No. 1 at 12-17.

Addressing Russell's claims, James states in pertinent part:

1.  ...  Russell states he had no standing to challenge the Title III intercept of Marcus Jenkins's phone and that the motion [to suppress] was meritless. This is incorrect. Russell was an aggrieved party, some of his calls were intercepted, and some arguably contained incriminating conversations. Further, if Russell had no standing, his motion would have been dismissed by the Magistrate Judge on that basis.

....

7.  ...  Even assuming Russell's arguments as relate to the motion to suppress were true (arguendo), he still cannot prove that the motion to suppress hurt his defense in any way. Ironically, if counsel had not filed the motion to suppress, Russell in his 28 U.S.C. §2255 would have assigned her failure to do so as ineffective assistance of counsel

8.  ...  Russell's suggestion that filing the motion to suppress conceded Russell's participation in the calls is absurd given that the motion to suppress had no impact on the trial. Introduction of this would have been inadmissible

at trial.[5]

Doc. No. 23 at 1-3.

\* \* \* \* \*

Russell knew pretrial the wire tap evidence would not be suppressed. He demanded a trial.  He did not complain prior to trial, during trial, or on appeal.

Doc. No. 17 at 4.

As the Government observes, Russell does not specifically explain why he did not have standing to challenge the intercepted calls on Title III or Fourth Amendment grounds. Furthermore, as James states in her affidavit, Russell wholly fails to demonstrate how he was prejudiced by James's filing and pursuit of the motion to suppress in his case.  Russell also fails to set forth specifics about how James "misrepresented the facts of the Government's case to him" or how it affected his decision to go to trial.  Finally, Russell fails to proffer evidence demonstrating that but for James's actions, he would have been successful in suppressing the intercepted phone calls and the outcome of the proceedings would have been different.  To the extent Russell presents an argument in support of this claim, he appears to maintain James should have eschewed the strategy she followed in attempting to challenge the intercepted phone calls and instead have insisted that Russell's voice was not on the calls. As noted above, however, James recognized Russell's voice on the calls and lacked a

---

[5] It is impermissible to use a defendant's testimony at a pretrial suppression hearing against him at trial on the issue of guilt where an objection is made. *Simmons v. United States*, 390 U.S. 377, 394 (1968).

22

reasonable basis for arguing otherwise, and Russell has not proffered any evidence that refutes James's personal observations or the trial testimony of Jenkins and Carter identifying Russell's voice on the calls.  Because Russell fails to show deficient performance by James or any resulting prejudice, he is not entitled to relief based on this claim of ineffective assistance of counsel.  *Strickland*, 668 U.S. at 687-88.

### 5.      *Counsel's Interference with Russell's Right to Testify*

Russell contends that James interfered with his right to testify by (a) failing to call him at the suppression hearing and at trial to testify that it was not his voice on the intercepted phone calls, (b) telling him he "could find a new lawyer" if he chose to testify and that it was counsel's decision whether he testified or not, and (c) failing to follow his advice on how best to challenge the intercepted calls and on the best defense to pursue.  *See* Doc. No. 1 at 10-13.  According to Russell, he urged James to call him to testify at both the suppression hearing and trial about the fact that it was not him speaking on the intercepted phone calls.  *Id*.

Addressing Russell's allegations, James states:

11.  Russell's interpretation of the downside of him testifying at the suppression hearing is again wrong.  James never thought Russell's testimony at the suppression hearing would be used at trial.  Instead, James could not put Russell on the stand to deny his voice on the recordings, a fact to which he had already conceded.  More importantly, the Magistrate Judge would have made an independent finding the voice was Russell's.  Once that occurred Russell would have been exposed to a count for perjury or at the least a two-level sentencing enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of justice.

23

12.   Counsel did not threaten or manipulate Russell into agreeing not to testify at trial.

Doc. No. 23 at 3-4.

*   *   *   *   *

Russell was advised of his right to testify or not.   Counsel in recognizing his voice on the recordings, and based on information he had provided, knew that Russell's testimony in denying participation in the offense would have been perjury.   However, even still Russell made a voluntary decision not to testify.   He had a pending state court case involving crack cocaine and a firearm which would likely have been revealed during his testimony.   This was also considered by Russell in deciding not to testify.

Doc. No. 17 at 4.

James's decision not to put Russell on the stand at the suppression hearing was

professionally reasonable.  James recognized Russell's voice on the intercepted phone calls.

By not putting Russell on the stand at the suppression hearing to deny his voice on the

recordings, she prevented him from exposing himself to a charge of perjury and also to a

§ 3C1.1 sentence enhancement for obstruction of justice.   Because James recognized

Russell's voice on the calls and Russell has proffered no evidence to refutes James's personal

observations, Russell has not demonstrated that the outcome of the suppression hearing

would have been favorable to him if James had put him on the stand.[6]  Indeed, the record

establishes that James's concerns about Russell opening himself up to a perjury charge or an

obstruction-of-justice enhancement were well founded.   Russell's suggestion that his best

---

[6] Testimony from Russell was not necessary for James to pursue her Title III challenge to the wiretaps at the suppression hearing.

24

defense involved the commission of perjury is not well taken.

As for Russell not testifying at trial, the following questioning of Russell (under oath) took place outside the presence of the jury at the conclusion of the presentation of evidence at trial:

EXAMINATION BY MS. JAMES OF JAMES RUSSELL:

[MS. JAMES]:  Would you state your name, please.

[RUSSELL]:  James Russell.

[MS. JAMES]:  Are you the defendant in this case?

[RUSSELL]:  Yes, ma'am.

[MS. JAMES]:  And have you and I had an opportunity to discuss the rights that you have as relates to the trial?

[RUSSELL]:  Yes, ma'am.

[MS. JAMES]:  And did you understand that you have an absolute right in this case to testify in your own defense if you want to?  Do you understand that?

[RUSSELL]:  Yes, ma'am.

[MS. JAMES]:  And do you also understand that you have an absolute right to choose not to testify?  And if you choose not to testify, that it can't be used against you in any way?

[RUSSELL]:  Yes, ma'am.

[MS. JAMES]:  Do you understand that the judge has already told the jury that, and that the judge will likely tell the jury again at the end of the case when he gives them the law of the case?

[RUSSELL]:  Yes, ma'am.

[MS. JAMES]:  And have you and I had occasion to discuss what good could come out of your testimony and what bad could come out of your testimony?

[RUSSELL]:  Yes, ma'am.

[MS. JAMES]:  And after consultation with me – And you've looked at the discovery in this case, haven't you?

[RUSSELL]:  Yes, ma'am.

[MS. JAMES]: And you had discussions with me about what the evidence showed and didn't show?

[RUSSELL]:  Yes, ma'am.

[MS. JAMES]:  And after having considered the evidence and the state of the case, and the good and bad that could come from you testifying, have you made a decision as to whether or not you want to testify?

[RUSSELL]:  Yes, ma'am.

[MS. JAMES]:  Do you want to testify?

[RUSSELL]:  No, ma'am.

[MS. JAMES]: And has anyone made you any promises or threatened you in any way to get you to make that decision?

[RUSSELL]:  No, ma'am.

[MS. JAMES]:  Are you making that decision because that is the decision that you've arrived at after having considered all the things that we just discussed?

[RUSSELL]:  Yes, ma'am.

MS. JAMES:  Judge, I'm satisfied.

THE COURT:  All right, Mr. Russell.  So it's your personal decision not to testify in this case, is that correct?

[RUSSELL]: Yes, sir.

Ex. T at 118-20.

In light of this record, it is disingenuous of Russell now to claim that James interfered with his right to testify at trial.  Russell declared, under oath, that he understood his right to testify, that he had discussed the decision whether or not to testify with James, that it was his own decision not to testify, and that his decision in this regard was not the product of any threats or promises.  "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  It is abundantly clear that this is not a case of defense counsel's refusal to honor a defendant's decision to testify, or of counsel's failure to inform a defendant that he has a right to testify and that the final decision whether to testify is the defendant's alone.  *See, e.g., Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999).

"It is clear that a criminal defendant has a constitutional right to testify in his own behalf at trial."  *United States v. Teague*, 953 F.2d 1525, 1530 (11th Cir. 1992).  However, the right is not unlimited and does not include the right to commit perjury.  *Id*.  "[D]efense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice," but the ultimate decision of whether a defendant testifies is for the defendant to make.  *Id*. at 1533.  Where the record reflects that

27

a defendant's will was not overborne by counsel and that counsel advised the defendant of his right to testify, that he should not exercise that right, and defendant did not protest, there is no deficient performance by counsel. *Id*. at 1535-36. Russell fails to demonstrate that James's performance in this regard was professionally unreasonable or that he was prejudiced by James's performance. *Strickland*, 668 U.S. at 687-88. Consequently, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 6.  *Failure to Make Government Prove Controlled Substance Was Crack Cocaine*

Russell contends that James was ineffective for failing to hold the Government to its burden of demonstrating through reliable and admissible evidence that the cocaine Russell conspired to distribute was the crack form instead of some other form. Doc. No. 1 at 9-10. More specifically, Russell argues that James failed to make the Government establish by chemical analysis and other evidence that the cocaine base he was convicted of distributing was not some form of cocaine base other than crack cocaine. *Id*.

As the Government correctly observes, the drug conspiracy in Russell's case was a "dry" conspiracy, i.e., one in which no drugs are actually seized. Because no drug amounts were seized, James cannot be faulted for failing to have had any cocaine analyzed by forensic chemists to determine if it was crack cocaine as opposed to some other form of cocaine base. At trial, DEA Special Agent Bret Hamilton testified that Russell and Marcus Jenkins agreed, during five recorded phone calls, to buy and sell both crack cocaine and powder cocaine. *See* Ex. S at 93. Jenkins testified that he negotiated to buy 12 grams of crack cocaine from

28

Russell on March 24, 2008, *id*. at 186 & 217-23; one half ounce of crack cocaine from Russell on March 24, 2008, *id*. at189; and another half ounce of crack cocaine on March 26, 2008, *id*. at 191.  There is no evidence that Russell negotiated to sell Jenkins some form of cocaine base that was not crack cocaine.  Likewise, there is no evidence that Russell was involved in buying some form of cocaine base that was not crack cocaine.  Under the circumstances, there was no basis for James to argue that the cocaine base Russell was accused of distributing was some form of cocaine base other than crack cocaine.

Moreover, because Russell has not presented any evidence that he negotiated the sale of some form of cocaine base other than crack cocaine, he fails to demonstrate how he was prejudiced by any actions by James with regard to this claim.  Consequently, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 7.    Failure to Challenge Admissibility of Coconspirators' Plea Agreements

Russell contends that James rendered ineffective assistance of counsel by failing to object to the admissibility of the plea agreements of his coconspirators Marcus Jenkins and Draper Carter.[7]  Doc. No. 1 at 20.  The plea agreements, however, were admissible, *see United States v. Smith*, 893 F.2d 1269, 1272-73 (11th Cir. 1990), and Russell fails to argue any legal basis for their exclusion.  Evidence of a coconspirator's guilty plea is admissible for the purpose of assisting the jury in assessing the credibility of a witness.  *See United*

---

[7] The plea agreements of Jenkins and Carter were admitted into evidence during their trial testimony.  *See* Ex. S at 124-30; Ex. T at 73-78.

*States v. Nickl*, 427 F.3d 1286, 1294 n.2 (10th Cir. 2005). When a plea is admissible, the United States is entitled to introduce into evidence the full contents of the plea agreement of a cooperating witness during the witness's direct testimony. *See United States v. Harlow*, 444 F.3d 1255, 1262 (10th Cir. 2006). James was not ineffective for failing to object when the Government offered the plea agreements of Jenkins and Carter into evidence. Counsel cannot be ineffective for failing to raise a meritless objection. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

### 8. *Failure to Challenge Admissibility of Proffer Statements*

Russell contends that James was ineffective for failing to challenge the admissibility at trial of the proffer statements of Jenkins and Carter. Doc. No. 1 at 17-24. In particular, Russell maintains that James should have argued that the Government had no reliable and admissible evidence to corroborate the proffer statements. *Id*.

Russell's claim notwithstanding, no proffer statement by Jenkins or Carter was admitted into evidence at the guilt phase of trial. At one point, when the prosecutor attempted to elicit testimony as to what Jenkins said during proffers with the Government, James objected, and that objection was sustained. *See* Ex. S at 106-07. Although the Government did use a proffer statement by Jenkins to refresh Jenkins's recollection while testifying,[8] that statement was not admitted into evidence at trial. *See* Ex. T at 11-12 & 16-18. Likewise, no proffer statement by Carter was offered into evidence at trial. James

---

[8] Russell does not argue that the proffer statement was improperly used to refresh Jenkins's recollection.

used Carter's proffer statement during cross-examination to demonstrate, for impeachment purposes, the immunity Carter received from the Government in exchange for his testimony. *Id*. at 87-88. However, the proffer statement was never introduced into evidence.

Because the proffer statements of Jenkins and Carter were never introduced into evidence at the guilt stage of the trial, Russell has not demonstrated that James performed deficiently with regard to their alleged admission. Further, because the proffer statements were not admitted at trial, there was no reason for James to argue that they were not corroborated by reliable and admissible evidence. This allegation of ineffective assistance of counsel is without any merit.

In his § 2255 motion, Russell also excepts to James's failure to challenge the admissibility at trial of the proffer statements of codefendants Brandon Watkins, Ardarreus Shelton, James Mack, and Derrick Butler. *See* Doc. No. 1 at 23-24. Of these four individuals, however, only Shelton testified at the guilt phase of Russell's trial, and he was called to the stand by James as a witness for the defense. Although James referred to Shelton's proffer statement when cross-examining him, none of the testimony elicited from Shelton concerned the details of the proffer statement. *Id*. Russell fails to suggest how any of the testimony elicited from Shelton was in any way prejudicial to his defense. Russell fails to demonstrate the deficient performance and resulting prejudice required to sustain a claim of ineffective assistance of counsel under the *Strickland* standard. Consequently, he is not entitled to any relief based on this claim.

31

9.    *Failure to Object to Admissibility of Photographs of Coconspirators*

Russell contends that James was ineffective for failing to object to the admission of "extremely prejudicial" photographs of his coconspirators. Doc. No. 1 at 18-20. He further maintains that the Government did not establish the proper foundation for admission of the photographs. *Id*.

The Government introduced photographs of all of Russell's coconspirators so that the jurors could keep the alleged participants clear in their minds. *See* Ex. S at 141-52; Ex. T at 23. As to each photograph admitted, a trial witness familiar with the person in the photograph identified that person. Consequently, the Government established a proper foundation for admission of each photograph. *See* Fed.R.Evid. 901(a), (b)(1);[9] *United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir. 1981) ("A witness qualifying a photograph need not be the photographer or see the picture taken; it is sufficient if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it."). Russell

---

[9] Rule 901 of the Federal Rules of Evidence provides, in pertinent part:

(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) Examples. The following are examples only – not a complete list – of evidence that satisfies the requirement:

(1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.

Fed.R.Evid. 901(a), (b)(1);

fails to present any evidence to support his assertion that the photographs of his coconspirators were "extremely prejudicial." Thus, James had no basis to object – either on foundational grounds or on grounds of prejudice – to admission of the photographs. As previously observed, counsel cannot be ineffective for failing to raise a meritless objection. *See Chandler*, 240 F.3d at 917; *Winfield*, 960 F.2d at 974. Accordingly, Russell is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 10.     *Failure to Assert Buyer-Seller Defense*

Russell contends that James was ineffective for failing to challenge the conspiracy count of the indictment on the ground that he and Marcus Jenkins had no more than a buyer-seller relationship. Doc. No. 1 at 24-28.

The Government correctly observes that, throughout Russell's trial and after, James argued that Russell and Jenkins had, at most, a buyer-seller relationship. Before trial, James proposed the following jury instruction that a buyer-seller relationship alone is insufficient to establish the existence of a conspiracy:

BUYER-SELLER RELATIONSHIP

> A single drug transaction involving "no prior contemporaneous understanding" between the buyer and seller is insufficient to support a conspiracy conviction....

Ex. P at 27 (citations omitted). James also filed a pretrial brief supporting the requested buyer-seller jury charge. Ex. R. In that brief, James argued that "the evidence supplied by the government prior to trial supports at best no more than a buyer/seller relationship between

the Defendant and cooperating defendant Marcus Jenkins." *Id*. at 1.  James further argued:

> Based on the evidence provided pretrial and that expected during trial the government will fail to establish the Defendant's guilt as to the conspiracy charge beyond a reasonable doubt.  While a conspiracy may have existed between defendants Sam Alvarez, Ken Jenkins and Marcus Jenkins there is insufficient evidence that Russell ever entered a conspiratorial agreement with the aforementioned individuals or any other defendants named in the superseding indictment.

*Id*. at 5.

During her opening statements at trial, James told jurors that she expected the evidence to show a possible conspiracy between some of the individuals named in the indictment, but that the "evidence [was] going to fall short" on Russell, because he "didn't know about any of it."  Ex. S at 71.  James argued that the evidence would not show Russell came to a mutual agreement with others named in the indictment to distribute powder and crack cocaine and that individuals who were buying and selling drugs but were not part of a conspiracy were pulled into "the broad net that was thrown over the city" during the wiretap on which Russell was overheard.  *Id*.  In an oral Rule 29 motion for judgment of acquittal at the close of the Government's case, James argued that the Government had established nothing more than a buyer-seller relationship between Russell and Jenkins.  Ex. T at 96-97.  She argued likewise at the close of all of the evidence.  *Id*.  at 120-22.  The district court, however, denied the motions for judgment of acquittal.  *Id*. at 99 & 124. During closing arguments, James argued that, although there may have been proof of a conspiracy among some of the persons named in the indictment, as to others, including

34

Russell, there was proof only of the buying and selling of drugs.  *Id*. at 139.  After the district court instructed the jury, James objected to the court's failure to give her requested buyer-seller jury charge.  *Id*. at 170.  The court overruled the objection.  *Id*.  In a post-verdict motion for judgment of acquittal and/or new trial, James again argued that the Government had, at best, proven a buyer-seller relationship between Russell and Jenkins.  Ex. Y at 2.  That motion was denied.  *See United States v. Russell*, No. 2:08cr121-WHA, 2009 WL 1390835 at *2-3 (M.D.Ala. May 15, 2009).  James pursed the claim on appeal, arguing that the evidence showed only the existence of a buyer-seller relationship.  The Eleventh Circuit rejected the claim.[10]  *See United States v. Russell*, 378 Fed. App'x 884, 887-88 (11th Cir. 2010).

Russell's claim that James failed to challenge the conspiracy count on the ground that he and Jenkins had no more than a buyer-seller relationship is thoroughly belied by the record as recounted above.  Although James's arguments in this regard were rejected by the district court and Eleventh Circuit, her performance was professionally reasonable, and Russell has not shown that but for some failure on James's part, the court would have ruled differently.  Russell is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 11.    *Failure to Object to Admissibility of Proffer Statements at Sentencing*

---

[10] The Eleventh Circuit also rejected James's claim that the district court abused its discretion by refusing to give her requested jury instruction defining a buyer-seller relationship.  *United States v. Russell*, 378 Fed. App'x 884, 888 (11th Cir. 2010).

Russell contends that James rendered ineffective assistance of counsel by failing to object at sentencing to the admissibility of the proffer statements of his coconspirators, thereby, he says, foreclosing effective objections to the PSI.  Doc. No. 1 at 29-30.

At sentencing, DEA Special Agent Bret Hamilton testified about the contents of the proffer statements of several of Russell's coconspirators.  Ex. at 4-21.  Those proffer statements indicated that several of the coconspirators possessed firearms during and in furtherance of the conspiracy.  *Id*.  In his proffer statement, Draper Carter stated that he had seen Russell in possession of a 9 millimeter pistol during the conspiracy.  *Id*. at 10-11.

After hearing arguments from the Government and James, the district court found that the proffer statements were reliable, and the court accepted them as evidence for purposes of sentencing.  *Id*. at 20.  Based specifically on Draper Carter's proffer statement, the court found that Russell was in possession of a 9 millimeter pistol during the conspiracy.  *Id*.  The court then applied a two-level enhancement to Russell's offense level, pursuant to U.S.S.G. § 2D1.1(b)(1), for possessing a firearm during and in relation to the cocaine conspiracy.

Where the information in question is sufficiently reliable, a sentencing court may consider any information, including hearsay, regardless of its admissibility at trial, in determining a sentence.  *See United States v. Williams*, 526 F.3d 1312, 1321 n.2 (11th Cir. 2008) (citing *United States v. Wilson*, 183 F.3d 1291, 1301 (11th Cir. 1999)).  Russell fails to present a reasonable argument or any evidence that his coconspirators' proffer statements were unreliable and should not have been considered by the court in its sentencing

36

determinations. Consequently, he demonstrates neither deficient performance by James in this regard nor prejudice resulting from James's performance.  Therefore, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 12.   *Failure to Make Apprendi Argument*

Russell contends that James rendered ineffective assistance of counsel at sentencing by failing to make an argument based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Doc. No. 1 at 30.

Russell's claim notwithstanding, James did argue in her motion for new trial that the special verdict form used in the case did not comply with *Apprendi* and *Blakely v. Washington*, 542 U.S. 296 (2004), and that the Government should therefore be precluded from relying on the findings in the verdict form in determining the amounts of cocaine attributable to Russell.  Ex. Y at 8-9.  James's argument was partially successful, and the district court interpreted the jury's verdict on the amount of crack cocaine Russell possessed during the conspiracy as being less than five grams.[11]  *See United States v. Russell*, No. 2:08cr121-WHA, 2009 WL 1390835 at *4-5 (M.D.Ala. May 15, 2009).  Because James did make an *Apprendi* argument to the court and her argument was partially successful, Russell

---

[11] The special verdict form given to the jury contained an error regarding attributable amounts of crack cocaine and incorrectly gave jurors the option of finding the amount of crack cocaine attributable to the defendant as "less than 500 grams," when the correct option in this regard should have been "less than 5 grams."  The jury found Russell responsible for less than 500 grams of crack cocaine.  However, based on James's argument that the special verdict form contained an error, the district court agreed that the jury's verdict should be construed as finding Russell responsible for less than five grams of crack cocaine.

has not demonstrated that James rendered ineffective assistance of counsel in this regard.

It appears that Russell may also contend that James should have presented an *Apprendi*-type argument that it was improper for the district court to apply a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1), because his firearm possession was not charged in the indictment or found by the jury beyond a reasonable doubt. *See* Doc. No. 1 at 30. However, application of the firearm enhancement influenced only Russell's advisory guideline range and did not increase his statutory sentencing range. Thus, an *Apprendi* argument on this ground would have been meritless. *See United States v. Sanchez*, 269 F.3d 1250, 1262 (11th Cir. 2001) ("*Apprendi* does not apply to judge-made determinations pursuant to the Sentencing Guidelines."). Counsel is not ineffective for failing to raise a meritless claim. *Chandler*, 240 F.3d at 917; *Winfield*, 960 F.2d at 974.

### 13.   *Failure to Argue at Sentencing as to Proof that Controlled Substance Was Crack Cocaine*

Russell contends that James rendered ineffective assistance of counsel at sentencing by failing argue that the Government did not demonstrate the cocaine Russell conspired to distribute was the crack form instead of some other form. Doc. No. 1 at 30-31. For the same reasons as those set forth in Part II.B.6 of this Recommendation, above, Russell is not entitled to any relief based on this claim. There is no evidence that Russell negotiated to sell some form of cocaine base that was not crack cocaine. There is no evidence that Russell was involved in buying some form of cocaine base that was not crack cocaine. Thus, there was no basis for James to argue at sentencing that the cocaine base Russell was accused of

distributing was some form of cocaine base other than crack cocaine.

> **14.  Failure to Object to Sentence Based on Drug Quantities Reflected in Jury's Special Verdict**

Russell contends that James rendered ineffective assistance of counsel by failing object to his sentence based on the drug quantities reflected in the jury's special verdict. Doc. No. 1 at 31-32.  However, James did object, before and at sentencing, to the drug quantities reflected in the jury's verdict. Ex. Y at 8-9; Ex. FF at 3 & 39-43.  Moreover, as noted above in Part II.B.12 of this Recommendation, James argued in her motion for new trial that the special verdict form contained an error regarding the amount of crack cocaine attributable to the defendant and was successful in getting the district court to find that the jury's verdict should be construed as finding Russell responsible for less than five grams of crack cocaine (as opposed to less than 500 grams).  Russell wholly fails to demonstrate the deficient performance and resulting prejudice required to sustain a claim of ineffective assistance of counsel under *Strickland*.  Consequently, he is not entitled to any relief based on this claim.

> **15.  Failure to Raise All Issues on Appeal**

Finally, Russell contends that James rendered ineffective assistance of counsel on appeal by failing to raise all the above-discussed issues forming the basis of his claims of ineffective assistance of counsel.  Doc. No. 1 at 32-34.  However, this court has determined that none of the issues raised by Russell have any substantive merit.  As also noted, James did in fact raise some of these claims on direct appeal, but the Eleventh Circuit ruled that the

39

claims were without merit. Because Russell fails to establish the substantive merit of any of his above-discussed claims, he cannot show that James was ineffective for failing to raise the claims on direct appeal.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Russell be DENIED.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **July 15, 2013**. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 28th day of June, 2013.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE